UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALAN McMANN and DONNA McMANN, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, et al.,<br><br>Defendants. | CASE NO. 14-5429 BHS<br><br>ORDER ON DEFENDANT PACIFICORP'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant PacifiCorp's Motion for Summary Judgment. Dkt. 21. The Court has considered the pleadings filed in support of and in opposition to the motion, and the file herein.

Plaintiffs bring this case alleging that Alan McMann contracted pleural mesothelioma as a result of being exposed to asbestos while in the United States Navy from 1961 to 1965 and while he worked as a union carpenter at a variety of work sites from 1966 to 1978. Dkt. 22, at 4. Defendant PacifiCorp now moves to have the claims against it summarily dismissed. Dkt. 21. PacifiCorp's motion is granted because there are no genuine issues of fact as to whether Mr. McMann was exposed to asbestos while

on PacifiCorp's property.  The Court need not reach whether PacifiCorp owed a duty of care to him.

## I. FACTS AND PENDING MOTION

**A.    Relevant Facts**

After Mr. McMann left the United States Navy, he began to work as a union carpenter apprentice.  Dkt. 32-20, at 43.  He worked on multiple jobs sites.  Dkt. 32-20, at 43-44, and 84.  He testified that the first job (after his military service) that he believed he was exposed to asbestos was when he helped build duplexes in Lacey, Washington in 1968.  Dkt. 32-20, at 43-44.  Mr. McMann testified that the next job site that he believed he was exposed to asbestos was at the Centralia Steam Plant ("CSP"), and it is that site that is the subject of this motion.  Dkt. 32-20, at 53-54.

The CSP was constructed in the late 1960s and early 1970s by a group of eight utilities.  Dkt. 32-27.  The moving party here, PacifiCorp's predecessor in interest, Pacific Power & Light Company ("PP&L"), was the lead utility, with a 47% interest in CSP. Dkt. 32-27, at 5 and 12.  PP&L contracted with Bechtel Corporation to design and construct CSP.  Dkt. 32-26, at 4-50.

Mr. McMann started working at CSP in August of 1969 when the plant was being constructed.  Dkt. 22, at 7 and 15.  He testified that he worked for Bechtel, and only Bechtel, at the CSP.  Dkt. 32-20, at 54 and 88.  He had a hunting accident around October of 1969 and took five months off work.  Dkt. 22, at 7.  Mr. McMann returned to work at the CSP around March of 1970.  Dkt. 22, at 7.  After being shown Social Security Administration records, he agreed he worked there until 1970 (Dkt. 22, at 4 and 10), but a

week later, at another deposition, testified that he worked there until August of 1971 (Dkt. 32-20, at 55).

Mr. McMann's Social Security Administration Earnings Records show that he worked for Sequoia Ventures, Inc. in the 3rd and 4th quarters of 1969, and then again in the 2nd and 3rd quarters of 1970. Dkt. 22, at 24. (In 1980, Bechtel changed its name to Sequoia Ventures, Inc. Dkt. 22, at 6. Sequoia Ventures, Inc. states that these statements accurately reflect payments from Bechtel Corporation. Dkt. 22, at 11.) He did not earn any other wages with Sequoia Ventures, Inc./Bechtel. *Id.* Starting in the fourth quarter of 1970, Mr. McMann had earnings from CE & C Inc. in Tacoma, Washington and HCI Western in Portland, Oregon. Dkt. 22, at 25.

SequoiaVentures, in its answers to interrogatories, states that Mr. McMann worked for Bechtel from June 27, 1969 through November 19, 1969 and again from April 1, 1970 through September 16, 1970. Dkt. 22, at 8. Although difficult to read, Bechtel's termination records indicate that Mr. McMann's last day was September 16, 1970. Dkt. 25-1, at 3.

On August 10, 1970, Bechtel notified Owens Corning Fiberglass ("Owens Corning") that it had been awarded the thermal insulation contract for the CSP. Dkt. 25-2, at 23. Owens Corning was advised that it needed to provide certain documents and once it did, final execution of the contract would occur. *Id.*

Bechtel generated weekly progress reports on the CSP project. *See, e.g.*, Dkt. 32-22. For the week ending September 6, 1970, it reported that "Owens-Corning Fiberglass Corp. arrived on the job under their contract to supply and install all piping and

machinery insulation and to install boiler insulation." Dkt. 32-22, at 5.  For the week ending October 18, 1970, Owens Corning was reported as having "shot insulation pins on the north Unit #1 water wall panels below 390 elevation, and sanded spots for pins on the west water wall panels." Dkt. 32-22, at 11.  In the progress report for the week ending October 25, 1970, Bechtel reported that "Owens-Corning Fiberglass continued welding pins on the boiler walls.  Domestic water lines in the locker room have been insulated.  Scaffolding is being erected for insulation on the duct to the burner connecting duct." Dkt. 32-22, at 16.  The following two weeks, Owens Corning "continued welding pins on the boiler walls, erected scaffolding for insulation on the duct to the burner connecting duct, and welded mesh on Unit #1 hot air duct." Dkt. 32-22, at 21 and 26.  It is not until the week ending November 15, 1970, that Bechtel reports that "Owens-Corning Fiberglass began placing insulation on the north, south, and west walls of the Unit #1 boiler above and below elevation 357', erected scaffolding for insulation on the duct to the burner connecting duct, and welded mesh on Unit #1 hot air duct." Dkt. 32-22, at 30.

When asked how he believed he was exposed to asbestos when working at the CSP, Mr. McMann stated that he "was close by the insulators doing their job." Dkt. 32-20, at 56.  He was then asked:

> Q. What were the insulators doing?
> A. They were putting insulation around the steam pipes.
> Q. Can you describe for us the process the insulators would use to put the insulation on the steam pipes?
> A. They would use handsaws to cut it to fit where they were putting the insulation, and then they would wrap them with a - - with an asbestos cloth.  Then they would mix mud up, and coat the cloth like you would on a kid's cast. . . .

> Q. How far away from the insulators cutting the insulation and mixing the mud would you be when they were doing their work?
> A. Ten to 20 feet away.
> Q. Did the process insulators used to cut insulation at the [CSP] and mix mud and apply it, was that a dusty process?
> A. Yes.
> Q. Did you breathe that dust?
> A. Yes.
> Q. You said you were out there for about 19 months. How long were the insulators out there doing their insulation work at the [CSP]?
> A. Last four months I was there.
> Q. When the insulators were cutting insulation and mixing mud, did that cause debris to fall to the ground?
> A. Yes.
> Q. Who cleaned up this, this insulation and mud?
> A. I did.
> Q. And how did you do that?
> A. With a broom and dustpan.

Dkt. 32-20, at 57-58. In regard to what insulation was occurring on the job site, Mr. McMann further testified that, while he was setting concrete forms and constructing the "safe way scaffolding:"

> They were installing new boilers. They were insulating the boilers. They were insulating the high pressure steam lines, super heated steam lines. And, you know, the different trades that were—that were putting gaskets in and that kind of stuff. I wasn't involved but I was working right next to the guys.

Dkt. 32-19, at 59; *see also* Dkt. 32-19, at 61-62. He testified that the insulation work was occurring on a daily basis for the last four months he was there. Dkts. 32-19, at 62; and 32-20, at 58.

Plaintiff testified that after working at the CSP, he believed he was next exposed to asbestos when he participated in building the Olympia Brewery's new cellars in

1 Tumwater, Washington, and then at other job sites while working as a union carpenter.
2 Dkt. 32-20, at 60.

3 **B. Pending Motion**

4       In its motion for summary judgment, PacifiCorp argues that: (1) there are no
5 genuine issues of fact as to whether Mr. McMann was exposed to asbestos at the CSP,
6 and (2) as an employer of an independent contractor, PacifiCorp is not liable for the
7 injuries to an employee of that independent contractor. Dkts. 21 and 35.
8       Plaintiffs respond and argue that: (1) Mr. McMann was exposed to asbestos at the
9 CSP while working for Bechtel from approximately August 1969 to August of 1971, and
10 (2) PP&L retained control over the construction of the CSP under the relevant contracts,
11 and so owed Mr. McMann a duty to provide a safe workplace, a duty of care under
12 traditional premises liability law, and a statutory duty of care, all of which it breached.
13 Dkt. 32.

**II. DISCUSSION**

**A. Summary Judgment Standard**

      Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole,

could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B.     Exposure**

PacifiCorp's motion is granted and Plaintiffs' claim against PacifiCorp is dismissed.  Although Plaintiff testified that he worked at the CSP from August of 1969 to August of 1971, his testimony is self-serving and unsupported by corroborating evidence. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1157 (9th Cir. 1999) (a court need not credit self-serving testimony unsupported by corroborating evidence and undermined by other credible evidence).

Plaintiff testified that his exposure to asbestos was a result of being near the insulators the last four months of his employment there, which based on his assertions, was May to August of 1971.  Plaintiff's Social Security records, however, indicate that the last time he worked for Bechtel was the 3rd quarter (which ends in September) of 1970.  Plaintiff testified that the only entity that he worked for at the CSP was Bechtel. Bechtel's employment records show that the last day Plaintiff was employed at the CSP was September 16, 1970.  No reasonable juror would find that Plaintiff worked at the CSP after September of 1970 considering the virtually unimpeachable objective evidence in the record.

Moreover, the insulation contract, which was given to Owens Corning, was awarded in August of 1970.  Owens Corning employees arrived on the job site in the week ending September 6, 1970.  Aside from Plaintiff's testimony that insulators were insulating the last four months of his employment at the CSP, the first mention in the record of any insulation being installed in the CSP was for the week ending October 25, 1970, when Bechtel reported that Owens Corning insulated the domestic pipes in the

1 locker rooms.  Bechtel reported that Owens Corning did not begin insulating the boilers
2 and ducts until November 15, 1970, months after Plaintiff's last day on the job site.  A
3 rational trier of fact, considering the record as a whole, could not find for Plaintiff on this
4 issue.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Plaintiff has failed to show a genuine issue of material fact as to whether he was exposed to asbestos at the CSP where the only evidence he presented is "uncorroborated and self-serving" testimony.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).  Plaintiffs' claims against PacifiCorp are dismissed.  This ruling being dispositive of the motion, the Court need not reach whether PacifiCorp owed a duty of care to Mr. McMann.

### III.  ORDER

Therefore, it is hereby **ORDERED** that:

1. Defendant PacifiCorp's Motion for Summary Judgment (Dkt. 23) is **GRANTED;** and

2. Plaintiffs' claims against PacifiCorp are **DISMISSED**.

Dated this 2nd day of September, 2014.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge