UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONNA McMANN, individually and as Personal Representative of the heirs and estate of Alan McMann,

Plaintiff,

v.

AIR & LIQUID SYSTEMS CORPORATION, et al.,

Defendants.

CASE NO. C14-5429 BHS

ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant SB Decking, Inc.'s ("SB Decking") renewed motion for summary judgment. Dkt. 114. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On July 16, 2013, Plaintiffs Alan and Donna McMann ("McMann") filed a complaint alleging that Mr. McMann was exposed to asbestos while working for numerous defendants including SB Decking. Dkt. 59, Ex. 1.

ORDER - 1

> [The McManns] claim liability based upon the theories of product liability (RCW 7. 72 et seq.); negligence; conspiracy; strict product liability under Section 402A and 402B of the Restatement of Torts; premises liability; breach of warranty; (RCW 62A); and any other applicable theory of liability. The liability-creating conduct of defendants consisted, inter alia, of negligent and unsafe design; failure to inspect, test, warn, instruct, monitor, and/or recall; failure to substitute safe products; marketing or installing unreasonably dangerous or extra-hazardous and/or defective products; marketing or installing products not reasonably safe as designed; marketing or installing products not reasonably safe for lack of adequate warning and marketing or installing products with misrepresentations of product safety.

*Id.* at 3.

On October 22, 2014, SB Decking moved for summary judgment. Dkt. 65. On December 2, 2014, the Court granted SB Decking's motion barring claims of civil conspiracy, spoliation, and willful or wanton misconduct. Dkt. 80. The Court denied SB Decking's motion on the issue of McMann's failure to show causation. *Id.*

On December 15, 2014, SB Decking filed motions in limine to exclude evidence of products at Mr. McMann's worksite that were not at issue. Dkt. 85. On December 31, 2014, the Court issued an order requesting additional briefing on whether maritime law applies to this case. Dkt. 111.

On January 13, 2015, SB Decking filed an opening brief seeking summary judgment. Dkt. 114. On January 20, 2015, McMann responded. Dkt. 117. On January 22, 2015, SB Decking replied. Dkt. 118.

## II. FACTUAL BACKGROUND

On May 8, 2013, Mr. McMann was diagnosed with mesothelioma caused by exposure to asbestos. Dkt. 59, Ex. 1 at 4. Mr. McMann, a veteran of the United States

Navy, served aboard the *USS Firedrake*, an ammunition supply ship, from April 30, 1962 until June 18, 1965, when he was honorably discharged from active service. Dkt. 67, Ex. 1 at 5. On December 24, 2014, Mr. McMann passed away from mesothelioma. Dkt. 114 at 2.

On the *Firedrake*, Mr. McMann worked as a mess cook then spent the remainder of his time as a machinist's mate in the engine room. Dkt. 117 at 5. McMann alleges that he was exposed to asbestos dust while dry dock contractors in San Francisco replaced nonskid material on the decks of the *Firedrake*. Mr. McMann states that he inhaled the dust within ten feet of the repair. Dkt.117, Ex. 2 at 7.

### III. DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if

there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.  Admiralty Jurisdiction**

The parties contest the application of admiralty jurisdiction. SB Decking argues that because the *Firedrake* was a ship in commission on navigable waters, admiralty jurisdiction applies. Dkt. 114 at 4. McMann asserts that maritime law is unwarranted and that Washington State law applies. Dkt. 117 at 2. It is SB Decking's burden to establish that maritime law applies to this case. *Jerome B. Grubart, Inc. v. Great Lakes Dredge &*

1  *Dock Co.*, 513 U.S. 527, 534 (1995). In analyzing whether admiralty law applies, courts
2  apply( 1) the locality test and (2) the connection test. *Id*.

### 1. The Locality Test

Under the locality test, admiralty law is appropriate if "the tort occurred on navigable water or [if] the injury suffered on land was caused by a vessel on navigable water." *Id.* As the *Cabasug* court explained, "it is well-settled that vessels in dry dock are still considered to be on navigable waters for purposes of admiralty jurisdiction." *Cabasug v. Crane Co.*, 956 F. Supp. 2d 1178, 1187 (D. Haw. 2013). Here, McMann does not dispute that his alleged exposure to asbestos occurred on the *Firedrake*, a vessel on a dry dock. Dkt. 117, Ex. 2 at 8. Therefore, Mr. McMann's alleged exposure to asbestos satisfies the locality test.

### 2. The Connection Test

The connection test involves a two-part analysis and is met if (1) the incident has a potentially disruptive impact on maritime commerce, and (2) the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. *Sisson v. Ruby*, 497 U.S. 358, 370–372 (1990); *Grubart v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534 (1995). The Ninth Circuit has "taken an inclusive view of what general features of an incident have a potentially disruptive effect on maritime commerce." *In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1128 (9th Cir. 2009).

Mr. McMann claims that he was exposed to asbestos from SB Decking's harmful nonskid decking, which was located on a naval vessel. Navy worker injuries have the potential to impact maritime commerce because the Navy defends merchant mariners. A

shortage of labor to defend merchant ships could have an effect on maritime commerce. *Cabasug,* 956 F. Supp. 2d at 1188.

McMann, however, cites to *Conner v. Alpha Laval, Inc.,* 799 F. Supp. 2d 455 (E.D. Penn. 2011), for the proposition that primarily land-based exposure does not satisfy the connection test. But, this case is distinct from *Conner.* There, the injured party who was exposed to asbestos was characterized as a "predominantly land-based Navy worker." But, in the cases of three other injured parties mentioned in *Conner* who were characterized as "predominantly sea-based Navy workers," the court applied maritime jurisdiction. *Id.* at 468–69. Mr. McMann was a predominantly sea-based worker. He testified that he worked six months at sea and six months in port (but still aboard the ship) and completed four tours in Vietnam. Dkt. 67, Ex. 1 at 6. McMann's duties are, therefore, unlike the single worker in *Conner,* and more like those of the three workers to which admiralty jurisdiction applied.

McMann also argues, under *Conner,* that the majority of Mr. McMann's exposure, over his lifetime and among all defendants, must be predominantly sea-based to apply maritime jurisdiction to his case against SB Decking. Dkt. 117 at 2. *Conner* did not address this issue when considering whether land-based duties give rise to maritime jurisdiction. Moreover, McMann fails to cite any other authority for the proposition that McMann's claim against SB Decking is not governed by maritime law because Mr. McMann may have been exposed to other defendants' products during his lifetime. Under the current precedent, the first part of the connection test is, therefore, met.

The second part of the test is satisfied because SB Decking's harmful product involved decking material for use aboard naval ships. Courts have found that the manufacture of products for use aboard naval ships is an activity closely related to traditional maritime activity. *Conner,* 799 F. Supp. 2d. at 469. McMann does not dispute that he was aboard a Navy ship during his alleged exposure to SB Decking's nonskid.

McMann argues, however, that because the toxic decking was not solely used on ships, Mr. McMann's exposure should not be considered a maritime casualty. But, in previous pleadings, McMann filed evidence contrary to this position. Joseph O'Donnell, a former employee of Selby, the manufacturer of the alleged asbestos-containing nonskid which SB Decking later acquired, testified, "[t]hat's the only avenue [Selby] approached was the maritime industry." Dkt. 67, Ex. 4 at 16–17. McMann's current argument is, therefore, inconsistent with sworn testimony previously filed. Moreover, McMann does not cite, and the Court is unaware of, any authority that requires asbestos products to be used only in maritime application for admiralty law to apply. SB Decking has therefore met the second part of the connection test.

**C.     Asbestos Exposure**

Under admiralty law, SB Decking has renewed its motion for summary judgment that McMann cannot show facts necessary to establish the element of causation. SB Decking is entitled to judgment as a matter of law if McMann fails to make a sufficient showing on an essential element of a claim in the case on which McMann has the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

In *Lindstrom v. AC Product Liability Trust*, 424 F.3d 488 (6th Cir. 2005), the Sixth Circuit articulated the causation standard for asbestos cases under maritime law. In *Cabasug*, the court found that the Ninth Circuit would follow the causation standard articulated in *Lindstrom. Cabasug,* 989 F. Supp. 2d at 1033–37. McMann argues that since the *Lindstrom* standard is adopted from a long lineage of state law that was originally based on a substantial factor standard, the Court should adopt that standard here. Dkt. 117 at 14. The Court, however, agrees with the *Cabasug* court and will apply the standard set forth in *Lindstrom.*

In *Lindstrom*, the plaintiff, a merchant seaman, was allegedly exposed to asbestos from multiple defendants' products aboard numerous vessels. In order to prove causation in a product liability case under maritime law, the court held that a plaintiff must show "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Lindstrom*, 424 F.3d at 492. Under *Lindstrom*, minimal exposure to a defendant's product is insufficient to prove causation. *Id*. Additionally, a "mere showing that manufacturer's asbestos containing product was on the premises of plaintiff's workplace was insufficient for liability to attach to defendant." *Id*. at 498.

In this case, McMann's evidence shows, at most, that SB Decking's product was on the premises of Mr. McMann's workplace. McMann asserts that he was exposed to dust while the *Firedrake's* main deck nonskid was replaced in a dry dock. But, McMann fails to provide evidence showing that this particular nonskid contained asbestos. *See* Dkt. 117. The nonskid that SB Decking supplied that actually contained asbestos is only

shown to have occupied a part of the ship which Mr. McMann never entered. Dkt. 66, Ex. B at 24. That nonskid was not replaced during any time material to Mr. McMann's employment and Mr. McMann does not claim he was exposed to a dust cloud of that toxic nonskid. McMann has not shown any exposure to asbestos from SB Decking's products, nor did McMann show that any of SB Decking's products were a substantial factor in causing his illness. *See* Dkts. 67 & 117. The Court, therefore, finds that McMann fails to make a sufficient showing of the causation element of his claim.

## IV. ORDER

Therefore, it is hereby **ORDERED** that SB Decking's renewed motion for summary judgment (Dkt. 114) is **GRANTED**.

Dated this 3rd day of March, 2015.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge